JEFFREY A. WILTSHIRE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wiltshire v. Commissioner
Docket No. 15434-90
United States Tax Court
T.C. Memo 1992-604; 1992 Tax Ct. Memo LEXIS 636; 64 T.C.M. (CCH) 1060; October 13, 1992, Filed *636 Decision will be entered for respondent. For Jeffrey A. Wiltshire, pro se. For Respondent: Richard A. Stone. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Joan Seitz Pate pursuant to the provisions of section 7443(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PATE, Special Trial Judge: Respondent determined deficiencies in the 1984 and 1985 Federal income taxes of Jeffrey A. Wiltshire (hereinafter petitioner) and his wife, Carol A. Wiltshire (hereinafter Carol), in the amounts of $ 10,066 and $ 2,139, respectively. Respondent also determined that Carol and petitioner are liable for a $ 2,517 addition to tax under section 6661 for 1984 and that only *637 Carol is liable for the additions to tax for fraud under section 6653(b)(1) and (2) for 1984 and 1985 in the respective amounts of $ 5,033 and $ 1,069, plus 50 percent of the interest due on the deficiency. Respondent's determination is based on adjustments to income for funds embezzled by Carol from her employer in the amounts of $ 27,998 and $ 9,984 for 1984 and 1985, respectively. [2] Petitioner does not contest respondent's determination but claims that he should be relieved of liability therefrom because he is an innocent spouse. FINDINGS OF FACT Some of the facts have been stipulated and they are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. At the time the petition was filed, *638 petitioner resided in Godfrey, Illinois. From 1981 until June 1985, Carol worked as a teller and assistant cashier of the Godfrey State Bank (hereinafter the Bank). While so employed, she embezzled substantial sums of money and, in June 1985, she was fired upon the Bank's learning of her defalcations. In October 1986, she was charged in the United States District Court for the Southern District of Illinois with 88 counts of misapplication of funds (allegedly taking place between November 1, 1981, and May 6, 1985, and totaling $ 129,355). On January 9, 1987, she pled guilty to 78 of these counts. During all times relevant to this case, petitioner worked as an assistant strip-anneal operator for Olin Corp. He first met Carol in 1981 and, after each of them had obtained a divorce in October of 1981, they started dating. They moved in together in 1983 and were married in July 1984. Petitioner testified that he first learned of his wife's alleged embezzlement activities in June 1985 when she was terminated from her employment at the Bank. She denied the charges at the time. During the years in issue, petitioner routinely deposited his paychecks into a joint checking account with *639 Carol, who used the account to pay their household expenses. Although petitioner had access to and reviewed the bank statements at the end of each month, he testified that he did not find any unexplainably large deposits. He did not submit any documentary evidence to support this testimony. During 1982, 1983, and 1984, Carol caused the following cashier's checks (among others) to be drawn on the Bank: DATE
PAYEE
AMOUNT
3/3/82
Jeff Wiltshire
$ 2,000
3/3/82
Jeff Wiltshire
2,000
1/9/83
Travel Express
2,000
(correct date is 1/9/84)
6/18/83
Jeff Wiltshire
1,500
1/27/84
Piasa Lincoln Mercury, Inc.
5,000
With regard to the first two checks, although petitioner admittedly endorsed the checks, he testified that he could not recall why these checks were written to him or what he did with the money. The third check was used to partially pay for a trip that he and Carol took to Hawaii. The fourth check also was endorsed by petitioner. He claims it was a loan made by Carol to a friend of his, but admitted that this loan was never evidenced by any note or other written obligation. The last check was used as a down payment on an automobile petitioner purchased. During *640 all relevant years, Carol and petitioner lived modestly. Until November 1984, they resided, rent free, in a home Carol inherited from her grandmother. They then purchased a home in Godfrey for $ 34,500, paying $ 500 down and financing the balance. They added new kitchen cabinets for $ 2,200 and purchased a satellite dish for $ 2,500. In addition, they took trips to Hawaii in 1983 and 1984. In 1988, petitioner purchased a used Ford pickup truck and an above-ground swimming pool. In 1989, he purchased a used Lincoln Town Car. Most of these purchases were at least partially financed through various banks. Carol prepared the joint Federal income tax returns for 1984 and 1985 that she and petitioner filed. On such returns, they reported the following amounts of gross income: 1984
1985
Wages:
Petitioner
$ 24,712
$ 20,548
Carol
12,303
4,671
Interest
217
27
Dividends
--  231
Pension Distribution
--  837
Total Gross Income
$ 37,232
$ 26,314
Neither income tax return disclosed the embezzled funds. The 1984 return was dated January 25, 1985, and the 1985 return was dated January 30, 1986. OPINION In general, when a husband and wife file a joint return *641 they are jointly and severally liable for the amount of tax due. Sec. 6013(d). However, one spouse may be relieved of the tax liability attributable to erroneous items of the other spouse if: (1) A joint return was filed for the taxable year in issue; (2) on such return, there is a substantial understatement of tax attributable to grossly erroneous items of one spouse; (3) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, of the existence of such substantial understatement; and (4) after considering all facts and circumstances, it would be inequitable to hold the other spouse liable for the deficiency in tax attributable to such understatement. Sec. 6013(e)(1); . The spouse seeking relief has the burden of proving that all of the requirements of section 6013(e) are met. Rule 142(a); , affd. ; . Failure to prove any *642 one of the requirements prevents the taxpayer from qualifying for relief. , affg. on this issue . The parties have agreed that the first two requirements of section 6013(e) are satisfied. With regard to the remaining requirements, petitioner claims that he did not know and had no reason to know of the omitted income and that it would be inequitable to hold him liable for the deficiency attributable to such understatement. Previous cases have found that, among others, the following three factors are persuasive in determining whether a spouse knew or had reason to know of the omitted income: (1) Participation in business affairs or bookkeeping, ; (2) unusual or lavish expenditures, ; and (3) the other spouse's refusal to be forthright about the omitted income, . The standard we use to make this determination is whether a reasonably *643 prudent person in the taxpayer's circumstances could be expected to know of the omissions at the time the return in question was signed. ; ; . The issue is a question of fact. In evaluating whether petitioner knew or had reason to know of Carol's embezzlement at the time he signed the 1984 and 1985 income tax returns, we have before us a record which poses more questions than answers. What did petitioner know of the circumstances surrounding Carol's discharge? What did she tell him? If she admitted that she was a suspect but either admitted or denied that she was culpable, why did they not file separate returns for 1985, thereby protecting him from liability? Did petitioner ever discuss with Carol whether or not embezzlement income should be reported? After reviewing this record, the questions that come to mind are endless. An example of one question remaining unanswered is raised *644 by petitioner's claim that he did not know of Carol's embezzlement income when he filed his joint return for 1985. Yet, he admits that Carol was fired from her job because of such defalcations in June 1985, months prior to the date the 1985 return was even due. In fact, on January 30, 1986, he signed the 1985 income tax return, which omitted the embezzled funds. The record simply does not disclose why he chose to do this. [3]
Focusing on the three factors identified by previous cases to be particularly persuasive in determining the extent of the taxpayer's knowledge of the omitted income, with regard to the first factor, petitioner claims that because Carol primarily *645 controlled their joint checking account and routinely paid their household expenses, he would not have known and had no reason to know of the omitted income. However, petitioner received and reviewed the bank statements every month. Although he testified that no unusual items were reflected therein, his failure to produce the bank statements and canceled checks for that period to substantiate his claim leads us to presume that such records would have been unfavorable to petitioner if he had produced them. See . With regard to the second factor, respondent argues that petitioner should have known that some income was not reported because his expenditures exceeded his income. However, given petitioner's and Carol's combined salaries, we do not find any unusual or lavish expenditures among the purchases the couple made. They purchased a modest home in 1984 and added several amenities. Each of them owned a car. They vacationed twice in Hawaii. Given that the majority of these purchases were financed, and that between them their salaries seem sufficient to fund these modest purchases, we are not *646 persuaded by this factor that petitioner had reason to know of the omitted income. However, we come to a different conclusion when we evaluate whether Carol was candid with petitioner regarding the embezzled sums. Petitioner would have us believe that he was completely misled by Carol's representations. Yet, even if we assume that Carol did not tell petitioner of her schemes or he believed her when she denied any wrongdoing, it appears to us that he would have been curious as to where the funds reflected in the cashier's checks originated. Petitioner testified that he believed that Carol received the money from her grandmother's estate prior to their marriage. Assuming this was so, where were these inherited funds invested? They certainly were not in petitioners' savings account (as Carol purportedly told petitioner), which produced just a small amount of interest. If the funds were not in savings, where were they? We think a reasonably prudent person would have inquired as to what income these funds produced and would have tried to determine why such income was not reported on the income tax returns Carol prepared. Further, petitioner admitted that he endorsed (on March 3, *647 1982) two cashier's checks for $ 2,000 each made payable to him. Yet, he testified that he could not explain what the checks were for or how he disposed of the funds. Given that the amount of these checks was relatively substantial considering the wages petitioners were earning, we have difficulty believing that petitioner could not remember anything about these checks when questioned about them at trial. Moreover, these checks were issued considerably before the years in issue, a fact which indicates that petitioner knew of the embezzlement many months before either income tax return was filed. Finally, although Carol accompanied petitioner to the trial of this case, petitioner made no attempt to call her to testify as to the reasons she embezzled the funds, the circumstances surrounding her embezzlement, what information she disclosed to petitioner, and what disposition she made of the funds embezzled. When a witness is available who could supply missing facts or substantiate the testimony of another, and the party carrying the burden of proof fails to call that witness to provide such testimony, we may properly infer that the testimony of that witness would have been unfavorable *648 to that party's case. , affg. ; , affd. . Based on all of the foregoing factors, we hold that petitioner has not carried his burden of proving that he did not know or had no reason to know of the substantial understatement. [4] Because petitioner did not prove that he met all four requirements of section 6013(e), we hold that he is not entitled to relief as an innocent spouse. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties stipulated that Carol Wiltshire pled guilty to having embezzled $ 27,598 and $ 9,284 in 1984 and 1985, respectively. The record does not reveal the reason for the difference between these amounts and the amounts added to petitioner's income in the notice of deficiency.↩
3. We note, however, that it is irrelevant whether or not petitioner was aware that embezzlement income was reportable as income. See , affg. ; .↩
4. As a consequence, we need not address whether holding petitioner liable for the deficiency would be inequitable. , affg. on this issue .↩